## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **HAROLD E. HOLMES JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 04-2591-CM** |
| | ) | |
| **DAVID W. BOAL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### MEMORANDUM AND ORDER

Plaintiff Harold E. Holmes, Jr., proceeding *pro se*, filed this suit against defendants David W. Boal, Dr. Alan Hancock, Jerry Fiscus, Nick Tomasic, the Honorable William Cook, Dennis Harris, Kansas Attorney General Phill Kline, Kansas Governor Kathleen Sebelius, and the Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government"), alleging civil rights violations under 42 U.S.C. §§ 1981, 1983, 1985(2), 1985(3), and 1986. Additionally, plaintiff invokes the court's supplemental jurisdiction, 28 U.S.C. § 1367, asserting a legal malpractice claim against defendant Boal. Plaintiff's claims stem from his 1979 state criminal convictions that the Tenth Circuit overturned in January 2003 on the basis of ineffective assistance of counsel.

This case is before the court on movant Willie J. Triplett's motion to intervene as a party plaintiff pursuant to Fed. R. Civ. P. 24 (Doc. 9), and defendant Boal's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or, in the alternative, motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 33). Specifically, defendant Boal seeks dismissal of plaintiff's legal malpractice claim.

### I. Background

In 1978, Harold Holmes was charged in the Wyandotte County, Kansas District Court with rape, aggravated burglary, and aggravated kidnapping.  Mr. Holmes retained David Boal to represent him in the state criminal case styled *Kansas v. Holmes*, No. 78 CR 0985.  In June 1979, a jury convicted Holmes on all charges.  Mr. Boal withdrew from his representation of Mr. Holmes on January 2, 1980.

After failing to have his convictions overturned on direct appeal, Mr. Holmes filed a motion for post-conviction relief pursuant to K.S.A. § 60-1507, contending that he received ineffective assistance of counsel because of Mr. Boal's failure to interview and call alibi witness and to object to hypnosis evidence.  At a hearing held in June 1983, the state district court denied Mr. Holmes's motion.  The Kansas Court of Appeals subsequently affirmed that decision.  In 1992, Mr. Holmes filed a second motion for post-conviction relief, claiming that his first post-conviction hearing was unfair due to the trial judge's alleged racial bias and that Mr. Boal provided ineffective counsel for failing to object to hypnosis testimony.  The state trial court denied Mr. Holmes's motion and the Kansas Court of Appeals affirmed that decision.

In April 1997, Mr. Holmes filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in Kansas federal district court, arguing that Mr. Boal provided ineffective assistance of counsel based on the same grounds previously asserted in his state court proceedings.  On August 31, 2000, the Honorable Dale E. Saffels denied Mr. Holmes's petition.  *Holmes v. McKune*, 117 F. Supp. 2d 1096, 1114 (D. Kan. 2000).[1]  However, on January 31, 2003, the Tenth Circuit reversed that decision and granted Mr. Holmes habeas relief.  *Holmes v. McKune*, 59 Fed. Appx. 239, 254 (10th Cir. 2003).  The Tenth Circuit concluded that Mr. Boal's failure to interview or call two potential alibi witnesses was prejudicial to Mr. Holmes's defense.  *Id.*  Mr.

---

[1]     Mr. Holmes was released on parole on December 31, 2001.

2

Holmes filed the instant action on December 10, 2004.

## II. Discussion

### A. Movant Triplett's Motion to Intervene

Movant Willie J. Triplett, proceeding *pro se*, moves to intervene in this action as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2), or alternatively, by permissive intervention pursuant to Fed. R. Civ. P. (b)(2).[2]  In particular, Mr. Triplett requests that the court grant his motion to intervene as a party plaintiff so that he can file claims against defendants Boal, Fiscus and Unified Government pursuant to 42 U.S.C. §§ 1981, 1985(2), 1985(3), and/or 1986.[3]  Mr. Triplett's proposed claims are based upon his contention that he was threatened and intimidated as a witness at plaintiff's state criminal trial.

"The first step in determining whether to permit intervention is to establish the validity of the proposed intervenor's claims." *Lucero ex rel. Chavez v. City of Albuquerque*, 140 F.R.D. 455, 457 (D. N.M. 1992). "A motion to intervene will thus be denied where the proposed complaint-in-intervention fails on its face to state a cognizable claim." *EEOC v. Victoria's Secret Stores, Inc.*, No. Civ. A. 02-6715, 2003 WL 21282193, at *1 (E.D. Penn. Jan. 13, 2003) (citations omitted); *see also Ceribelli v. Elghanayan*, No. 91 Civ. 3337 (CSH), 1994 WL 529853, at *2 (S.D.N.Y. Sept. 28, 1994) (recognizing that legal futility is a basis to reject a motion to intervene under Fed. R. Civ. P. 24).

The court determines that it is not necessary to evaluate whether Mr. Triplett can satisfy the criteria for either mandatory or permissive intervention because his proposed claims are time-barred by the applicable

---

[2]        Mr. Triplett is a prisoner incarcerated at the Lansing Correctional Facility in Lansing, Kansas.

[3]        Mr. Triplett's proposed civil rights complaint selectively incorporates portions of plaintiff's complaint.

statute of limitations.

"Federal law controls questions relating to accrual of federal causes of action." *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993) (citation omitted). "In general, under the federal discovery rule, claims accrue and 'the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (citing *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)). Thus, "[a] civil rights action accrues when 'facts that would support a cause of action are or should be apparent.'" *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (citation omitted).

Mr. Triplett claims that police and prosecutors threatened and intimidated him in an attempt to prevent him from testifying truthfully at plaintiff's state criminal trial. In particular, Mr. Triplett directs the court to his affidavit attached to plaintiff's complaint, dated May 27, 1999. In that affidavit, Mr. Triplett states that defendant Fiscus told him (1) that he would not be charged with the rape if he testified that plaintiff committed the act instead; and (2) plaintiff would not be convicted for killing Mr. Triplett's cousin unless he testified at plaintiff's rape trial.[4] Mr. Triplett declares that he agreed to defendant Fiscus's demands because he did not want to be charged with the rape and he wanted plaintiff to go to prison for killing his cousin. Additionally, Mr. Triplett claims that defendant Fiscus threatened to personally see to it that he was charged with the rape if he ever changed his story. Despite these alleged threats, Mr. Triplett's affidavit states: "I am coming clean with the truth because Holmes . . . did about twenty years for killing [my cousin] and he has paid for it, and I feel a little bad now about helping the police give Holmes a free rape case."

---

[4]     In 1978, plaintiff shot and killed Mr. Triplett's cousin, Ricky Miller, and was later charged with voluntary manslaughter. *Holmes*, 59 Fed. Appx. at 242.

The court concludes that the underlying basis for Mr. Triplett's civil rights claims were apparent to him no later than June 1979, the date of plaintiff's state criminal convictions. Thus, Mr. Triplett's claims are time-barred unless he provides a legally sufficient reason to toll the statute of limitations for that twenty-year plus period. *See Perkins v. Rent-A-Center*, No. 04-2019-GTV, 2004 WL 911305, at *1 (D. Kan. Apr. 27, 2004) (noting that claims arising under § 1981(a) are subject to a two-year statute of limitations, while claims arising under § 1981(b) are subject to a four-year statute of limitations); *Wesley v. Don Stein Buick, Inc.*, 42 F. Supp. 2d 1192, 1197 (D. Kan. 1999) (stating that § 1985 claims are governed by a two-year statute of limitations); *Lawton v. Medevac Mid-America, Inc.*, 138 F.R.D. 586, 589 n.2 (D. Kan. 1991) (citation omitted) (observing that § 1986 claims are subject to a one-year statute of limitations).

To toll the limitations period, Mr. Triplett relies on the doctrine of equitable estoppel, arguing that he did not come forward with the truth and file a lawsuit on his own because of defendant Fiscus's threats to charge him with rape if he ever changed his story. Even assuming that Mr. Triplett satisfies the requirements for equitable estoppel or a form of equitable tolling based on duress, the court finds that any alleged threats no longer had any force as of May 27, 1999, the date Mr. Triplett broke his silence and signed an affidavit regarding his account of the truth. Mr. Triplett's civil rights claims are still time-barred under this scenario because he filed his motion on December 22, 2004. Accordingly, the court denies his motion to intervene on the grounds of futility.

### B.  Defendant Boal's Motion for Judgment on the Pleadings as to Legal Malpractice Claim

Defendant Boal argues that plaintiff's legal malpractice claim is barred under Kansas's ten-year statute

5

of repose, K.S.A. § 60-513(b).[5]  Defendant Boal contends that any acts of alleged legal malpractice occurred no later than January 2, 1980, when he withdrew from representing plaintiff in his state criminal trial.  In response, plaintiff asserts the doctrine of equitable estoppel to prevent defendant Boal from relying on a statute of repose defense.  Furthermore, he maintains that any application of the statute of repose to his case or to legal malpractice claims generally brought against criminal defense attorneys is a violation of due process, equal protection, and separation of powers under both the federal and state constitutions.

### 1.  Standard of Review

The court construes defendant Boal's  motion as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), as opposed to a motion for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), because he filed the motion on the same day he filed his answer to plaintiff's complaint.  *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (citations omitted) ("If the defendant makes the motion after filing the answer, the motion should generally be treated as a motion for judgment on the pleadings.").  As a practical matter, the distinction is one without a difference, as "[a] motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is treated as motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992) (citation omitted).  Accordingly, the court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff."  *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (citing *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 556 (10th Cir. 1999)).  "A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'"  *Callery v. United States Life Ins. Co.*, 392 F.3d 401, 404 (10th Cir. 2004) (quoting *Conley*

---

[5]         The parties agree that plaintiff's legal malpractice claim is governed by Kansas law.

*v. Gibson*, 355 U.S. 41, 45-46 (1957)).[6]

2. Legal Malpractice Claims Under Kansas Law

A plaintiff must ordinarily prove four elements to prevail on a legal malpractice claim: "(1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) actual loss or damage." *Bergstrom v. Noah*, 266 Kan. 847, 874, 974 P.2d 531 (1999) (citing *Hunt v. Dresie*, 241 Kan. 647, 660, 740 P.2d 1046 (1987)). Additionally, a plaintiff asserting that his or her attorney negligently handled a claim must prove that the claim is valid and a favorable judgment would have resulted in the underlying lawsuit "but for" the attorney's malpractice. *Webb v. Pomeroy*, 8 Kan. App. 2d 246, 249, 655 P.2d 465 (1983). In July 2003, the Kansas Supreme Court extended this last requirement to the criminal context. Specifically, in a case of first impression in Kansas, the court in *Canaan v. Bartee* adopted the exoneration rule, which requires a person convicted in a criminal proceeding to first obtain postconviction relief before maintaining a legal malpractice claim against his or her former criminal defense attorney(s). 276 Kan. 116, 117, 72 P.3d 911 (2003).[7] Although plaintiff successfully obtained habeas relief on January 31, 2003, defendant Boal maintains that his legal malpractice

---

[6]     Plaintiff asks the court to review defendant Boal's motion under the summary judgment standard because defendant Boal attached a letter to his motion for judgment on the pleadings. The court declines plaintiff's invitation because it has considered only the parties' pleadings and the materials attached to plaintiff's complaint in reaching its decision. *See* Fed. R. Civ. P. 12(c) ( "If . . . matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . .").

[7]     The Kansas Supreme Court expressly declined to address whether a litigant must also prove his or her actual innocence to establish a legal malpractice claim. *Id.* at 131. In addition to the statute of repose defense, defendant Boal argues that plaintiff's legal malpractice claim should be dismissed because he cannot prove his actual innocence. Because of the court's resolution of the statute of repose defense, it is not necessary to address whether Kansas law would require a plaintiff to prove actual innocence.

7

claim is time-barred under Kansas's statute of repose.[8]

### 3.   Applicability of Kansas's Statute of Repose

"A statute of repose limits the time during which a cause of action can arise and usually runs from the act of a defendant." *Harding v. K.C. Wall Prods., Inc.*, 250 Kan. 655, 668, 831 P.2d 958  (1992).  "It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued." *Id.*  K.S.A. § 60-513(b) is a statute of repose.  *Id.* at 968.  The statute provides, in relevant part:

> the causes of action listed in [K.S.A. § 60-513] subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.

K.S.A. § 60-513(b).

As an initial matter, the court must evaluate whether plaintiff's legal malpractice claim is a cause of action listed in K.S.A. § 60-513(a) for the statute of repose to apply.  Both plaintiff and defendant Boal assert that plaintiff's legal malpractice claim sounds in tort and is subject to the two-year statute of limitations set forth in K.S.A. § 60-513(a)(4).  *See* K.S.A. § 60-513(a)(4) (providing a two-year statute of limitations for "[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated."); *FDIC v. Gantenbein*, No. 90-2303-V, 1992 WL 279772, at *3 (D. Kan. Sept. 30, 1992) (citing *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 86, 716 P.2d 575 (1986) ("A legal malpractice action based on claims of negligence and breach

---

[8]     Because the Kansas Supreme Court did not adopt the exoneration rule until 2003, Kansas law did not expressly prevent plaintiff from filing a legal malpractice action against defendant Boal before that time. Plaintiff's brief acknowledges this point.  Plaintiff, citing several older decisions from other states that adopted the exoneration rule, contends that he acted reasonably in believing that the doctrine of collateral estoppel prevented him from bringing his legal malpractice claim until he secured postconviction relief.  The court declines to comment on the reasonableness of plaintiff's belief.

of fiduciary duty sounds in tort and is subject to the tort statute of limitations [under K.S.A. § 60-513(a)(4)].")).

Paragraph thirty-five of plaintiff's complaint claims that as a result of the attorney-client relationship he created,

defendant Boal had a duty to represent him "with the reasonable care, skill and diligence possessed and

exercised by the ordinary attorney in similar circumstances." Plaintiff's complaint then proceeds to list nine duties

defendant Boal allegedly breached.  After reviewing plaintiff's complaint, the court agrees that plaintiff's legal

malpractice claim sounds in tort, not contract, and is governed by K.S.A. § 60-513(a)(4).  *See Pancake*

*House*, 239 Kan. at 86 (citation omitted) ("Where the essential claim of the action is a breach of a duty imposed

by law upon the relationship of attorney/client and not of the contract itself, the action is in tort.").[9]

As a result of K.S.A. § 60-513(b)'s application to plaintiff's legal malpractice claim, it follows that the

---

[9]        Even though defendant Boal does not assert a statute of limitations defense, plaintiff maintains that his legal malpractice claim accrued on January 31, 2003, when the Tenth Circuit granted him habeas relief.  Thus, plaintiff states that his claim is timely under the two-year statute of limitations because he filed this case on December 10, 2004.  Plaintiff's position appears to be correct.  In *Canaan*, the Kansas Supreme Court noted that it had recognized several theories for determining when a legal malpractice claim accrues and when the applicable statute of limitations period commences, and that the appropriate theory depended on the specific facts and circumstances of each case.  276 Kan. at 130 (citing *Pancake House*, 239 Kan. at 87).  In rejecting the argument that the exoneration rule was unconstitutional because it prevented a person from seeking a remedy in court for legal malpractice, the Kansas Supreme Court stated:

> the adoption of the exoneration rule could be construed simply as a recognition that a plaintiff has no cause of action until he or she can establish the causation element of his or her claim. In other words, until a plaintiff has been exonerated, his or her criminal conduct and not his or her attorney's negligence is the proximate cause of his or her incarceration.  Under this theory, the plaintiff has no cause of action deserving of constitutional protection until exoneration occurs.

*Id.* at 131.  The court agrees that the language from *Canaan* supports the position that a cause of action for legal malpractice would not accrue until a person obtains postconviction relief.  *See also Pancake House*, 239 Kan. at 87 (citations omitted) ("The true test when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted his action to a successful conclusion.").

claim is barred because the last possible wrongful act committed by defendant Boal occurred on January 2, 1980, the date he withdrew from representing plaintiff in the state criminal trial. *See* K.S.A. § 60-513(b) (providing that "in no event shall an action be commenced more than 10 years beyond the time of *the act giving rise to the cause of action*"); *Klose by Klose v. Wood Valley Racquet Club, Inc.*, 267 Kan. 164, 168, 975 P.2d 1218 (1999) (citation omitted) ("Since being amended to its present version, the statute has been held to require a negligence action to be brought within 10 years of the wrongful act."); *Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, 698, 829 P.2d 578 (1992) ("The plain language of the statute and the applicable case law require that after July 1, 1989, a negligence action must be brought within 10 years of the original wrongful act or the action is barred.").

Nevertheless, plaintiff argues that defendant should be equitably estopped from raising the statute of repose defense. The court disagrees.

"The doctrine of equitable estoppel has been frequently used to prevent a defendant from relying on the statute of limitations as a defense where the defendant's fraudulent or wrongful conduct has caused the plaintiff not to file suit within the period of the statute of limitations." *Robinson v. Shah*, 23 Kan. App. 2d 812, 832, 936 P.2d 784 (1997). In *Robinson*, a medical malpractice case, the Kansas Court of Appeals recognized that the doctrine of equitable estoppel could be utilized against a defendant asserting a statute of repose defense "where the defendant's own fraudulent concealment has resulted in the delay in discovering the defendant's wrongful acts." *Id*; *see Stark v. Mercantile Bank, N.A.*, 29 Kan. App. 2d 717, 724, 33 P.3d 609 (2001) (recognizing that *Robinson* supports the proposition that "[f]raud or fraudulent concealment either toll the statute of repose or make it inapplicable," but concluding that the plaintiffs' allegations fell short of fraud or fraudulent concealment). *But see Robinson*, 23 Kan. App. 2d at 835 (Knudson, J. dissenting) (concluding "that the

10

doctrine of equitable estoppel, a judge-made remedy, is inconsistent with the entire concept of a statute of repose"); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) (stating that equitable estoppel does not apply to statutes of repose because "their very purpose is to set an outer limit unaffected by what the plaintiff knows"). Even if Kansas law would acknowledge that a defendant may be equitably estopped from raising a statute of repose defense in the context of a legal malpractice claim, the court concludes that plaintiff has failed to allege any fraudulent representation or concealment made by defendant Boal that prevented him from discovering defendant Boal's alleged malpractice. Rather, the record demonstrates that plaintiff continually argued that defendant Boal provided ineffective assistance of counsel in his state post-conviction and federal habeas proceedings.

Finally, plaintiff challenges whether the application of the statute of repose and the exoneration rule to his claim is constitutional. First, plaintiff argues that the application of the statute of repose to criminal legal malpractice claims violates due process because doctrines such as the exoneration rule require a person to first obtain postconviction relief, which may not occur until after the statute of repose has already barred the claim. Second, plaintiff argues that the application of the statute of repose to criminal malpractice claims violates equal protection guarantees. In particular, he asserts that malpractice actions against criminal defense attorneys are unconstitutionally held to a different standard, stating that malpractice actions against attorneys in civil matters may be brought at the time the wrongful conduct is discovered. Third, plaintiff maintains that the judicially crafted exoneration rule interferes with the legislative branch in violation of the separation of powers doctrine. He contends that the exoneration rule precludes an individual from bringing a legal malpractice action during the time the legislature contemplated that the statute of repose would be running.

To the extent plaintiff challenges the constitutionality of K.S.A. § 60-513(b), he fails. That statute, as

11

well as the harsh outcome that a statute of repose creates, has withstood several challenges under the federal and Kansas constitutions. *See Koch v. Shell Oil Co.*, 52 F.3d 878, 883 (10th Cir. 1995) (rejecting a "constitutional broadside" that K.S.A. § 60-513(b) violated due process, equal protection, and separation of powers protections); *Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1225 (10th Cir. 1991) (observing that while statutes of repose are harsh, rejecting the argument "that they deny due process or equal protection or that they invalidly deprive one of access to the courts in light of policy reasons for the statutes"); *Lester v. Eli Lilly & Co.*, 698 F. Supp. 843, 845 (D. Kan. 1988) (rejecting claim that K.S.A. § 60-513(b), as applied, violated Section 18 of the Kansas Constitution Bill of Rights and the Equal Protection Clause of the Fourteenth Amendment); *Admire Bank & Trust*, 250 Kan. at 699-700 (rejecting Fourteenth Amendment due process challenge); *Tomlinson v. Celotex Corp.*, 244 Kan. 474, 482, 770 P.2d 825 (1989), *overruled on other grounds by Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 820 P.2d 390 (1991) (rejecting claim that K.S.A. § 60-513(b), as applied, violated the guarantees of due process and equal protection); *see also Bonin v. Vannaman*, 261 Kan. 199, 213-19, 929 P.2d 754 (1996) (rejecting arguments that the eight-year statute of repose applicable to minors in K.S.A. § 60-515(a) violated due process and equal protection guarantees).

Likewise, the court rejects plaintiff's due process and equal protection challenges to the exoneration rule. First, the Kansas Supreme Court has already rejected plaintiff's due process argument. *See Canaan*, 276 Kan. at 131 (determining that the exoneration rule does not violate Section 18 of the Kansas Constitution Bill of Rights or the Due Process Clause of the Fourteenth Amendment). Second, because plaintiff is a member of a nonsuspect class, the exoneration rule must only bear a rational relationship to a legitimate governmental interest to pass constitutional muster. *Eaton v. Jarvis Prods. Corp.*, 965 F.2d 922, 929 (10th Cir. 1992). The court

concludes that the exoneration rule satisfies this test. *See Canaan*, 276 Kan. at 123 (finding persuasive various policies to justify the exoneration rule); *Peeler v. Hughes & Luce*, 909 S.W. 2d 494, 499 (Tex. 1995) (rejecting equal protection challenge under the state constitution because criminal defendants are not members of a suspect class and the exoneration rule is rationally related to the state's interest of preventing criminals from profiting from their illegal acts). Plaintiff's separation of powers challenge, however, requires further discussion.

In support of his separation of powers argument, plaintiff cites extensively to an Oregon Supreme Court decision that considered the exoneration rule. In *Stevens v. Bispham*, the Oregon Supreme Court adopted the exoneration rule and further held that the statute of limitations for a legal malpractice claim did not begin to accrue until an individual obtained postconviction relief (as opposed to the time the person discovered the alleged malpractice). 851 P.2d 556, 557 (Ore. 1993).[10]  In a concurring opinion, Judge Unis provided a thorough criticism of the exoneration rule, including the potential ramifications the rule could have in relation to the state's statute of repose. *Id.* at 566-79 (Unis, J., concurring). In particular, Judge Unis observed:

> It is not clear what relation the majority's "no-exoneration/no-harm" rule will have to the statute
> of ultimate repose, . . . which provides that "[i]n no event shall any action for negligent injury
> to person or property of another be commenced more than 10 years from the date of the act
> or omission complained of." On the one hand, the "act" occurred at the time of representation,
> but the majority is interfering with the legislative system by making it impossible in many
> instances for a criminal defendant to bring an action during the time in which the legislature
> contemplated that the statute of ultimate repose would be running. If, under the majority's rule,
> the statute of repose serves to limit claims, the
> majority has, in many instances, effectively eliminated such claims and has modified the statute
> of limitations enacted by the legislature.

*Id.* at 572 n.8.

---

[10]      In *Canaan*, the Kansas Supreme Court cited several state court decisions, including *Stevens*, to show that a majority of courts have adopted the exoneration rule after considering the issue. 276 Kan. at 122.

The hypothetical statute of repose issue discussed by Judge Unis is now squarely before this court. K.S.A. § 60-513(b) provides that "the causes of action listed in subsection (a) shall not be deemed to have accrued until *the act giving rise to the cause of action* first causes substantial injury, or . . . until the fact of injury becomes reasonably ascertainable to the injured party. . . ."  K.S.A. § 60-513(b) (emphasis added). When the Kansas Supreme Court adopted the exoneration rule it recognized, by implication, that a legal malpractice claim would not accrue, and the two-year statute of limitations would not begin to run, until exoneration occurred.  *See Canaan*, 276 Kan. at 131 (stating that under the theory of exoneration "a plaintiff has no cause of action until he or she can establish the causation element of his or her claim" and that "the plaintiff has no cause of action deserving of constitutional protection until exoneration occurs").  The Kansas Supreme Court, however, did not address the effect of K.S.A. § 60-513(b), which bars claims "commenced more than 10 years beyond the time of *the act giving rise to the cause of action*" regardless of when an individual obtains postconviction relief.  K.S.A. § 60-513(b).  In other words, a convicted person wanting to bring a legal malpractice claim against his or her defense attorney(s) in Kansas has ten years from the date of the alleged act of malpractice or ten years from the time the injury (most likely conviction) becomes reasonably ascertainable to obtain postconviction relief.  Otherwise, the cause of action will be extinguished under the statute of repose even if postconviction relief has not been obtained.[11]

---

[11]     To avoid statute of limitations problems caused by the exoneration rule, other state courts have adopted the "two-track" approach which rejects the legal fiction "that a wrongly convicted criminal defendant suffers no cognizable harm, and the criminal practice claims does not accrue, until he or she has obtained appellate relief."  *Coscia v. McKenna & Cuneo*, 25 P.3d 670, 678 (Cal. 2001) (citing *Gebhardt v. O'Rourke*, 510 N.W.2d 900, 906 (Mich. 1994)).  This approach permits "criminal malpractice actions to be filed simultaneously with postconviction proceedings and mandat[es] that the malpractice actions be stayed pending the outcome of the postconviction proceedings."  Meredith J. Duncan, *Criminal Malpractice: A Lawyer's Holiday*, 37 Ga. L. Rev. 1251, 1299-1302, 1306 (2003) (arguing for the adoption of a two-track approach); *see Morrison v. Goff*, 91 P.3d 1050, 1056-57 (Colo. 2004) (adopting a version of the two-track approach);

While the court is concerned by the result the exoneration rule creates in this case, it cannot conclude that the judicially-crafted rule violates the separation of powers doctrine by deviating from the Kansas Legislature's time of accrual for legal malpractice claims. *See Parcell v. Governmental Ethics Comm'n*, 639 F.2d 628, 633 (10th Cir. 1980) (citing *State ex. rel. Schneider v. Bennett*, 219 Kan. 285, 547 P.2d 786 (1976) (stating that "unless one branch is usurping the power of another and coercively influencing the other there is no violation of the doctrine of separation of powers").

**IT IS THEREFORE ORDERED** that defendant Boal's motion for judgment on the pleadings as to plaintiff's legal malpractice claim (Doc. 33) is granted.

**IT IS FURTHER ORDERED** that movant Willie J. Triplett's Motion to Intervene (Doc. 9) is denied.

Dated this 22nd day of August 2005, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

---

*Coscia*, 25 P.3d at 680 (same); *Gebhardt*, 510 N.W.2d at 907 (same); *Bailey v. Tucker*, 621 A.2d 108, 115 & n.13 (Penn. 1993) (same); *Berringer v. Steele*, 758 A.2d 574, 604 (Md. Ct. Spec. App. 2000) (same). Though bound to follow Kansas precedent, the court believes this to be the better approach.